UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION

SOUFIANE FAJJAJI                                                    Plaintiff

v.                                                    Civil Action No. 3:25-cv-562-RGJ

PATRICK HOERTER                                                    Defendant

* * * * *

**MEMORANDUM OPINION & ORDER**

Defendant Patrick Hoerter ("Hoerter") moves to dismiss *pro se* Plaintiff Soufiane Fajjaji's ("Fajjaji") claims against him. [DE 7]. Fajjaji responded [DE 10], and Hoerter replied [DE 11]. Briefing is complete and the matter is ripe. For the reasons below, the Court **GRANTS IN PART** and **DENIES IN PART WITHOUT PREJUDICE** Hoerter's motion to dismiss [DE 7]. The Court further **STAYS** this case pending resolution of the ongoing state-court action.

## I.    BACKGROUND

Fajjaji's claims arise from an ongoing domestic relations matter in Jefferson County Family Court concerning custody of Fajjaji's two minor children. [DE 1 at 3–4; DE 7-2]. In the family court matter, Defendant Hoerter served as the guardian *ad litem* ("GAL") for the minor children. [*Id.* at 4]. Fajjaji contends that throughout the case, Hoerter overstepped his role as GAL, obstructed the judicial process, and engaged in behavior that alienated Fajjaji from his children. [*Id.* at 4–7].

Fajjaji's complaint alleges the following facts. In 2023, during initial proceedings in the family court matter, Hoerter repeatedly "assumed the role of lead advocate by directing questioning, raising objections to Plaintiffs testimony, and manipulating the flow of proceedings as if he were presiding over the case." [*Id.* at 4]. Hoerter also advised the mother of Fajjaji's

1

children (the "mother") to seek an emergency protective order ("EPO") against Fajjaji despite Fajjaji's own pending EPO petition against the mother. [*Id.* at 10, 24]. When the court "dismissed both EPO petitions," Hoerter objected, speculating that Fajjaji might retaliate in the future. [*Id.* at 13]. Within days of this objection, a domestic violence order ("DVO") issued against Fajjaji. [*Id.* at 13].

In 2024, Hoerter objected to other findings favorable to Fajjaji, including a Cabinet for Health and Family Services ("CHFS") report that found no evidence of abuse or neglect by Fajjaji. [*Id.* at 4, 12]. During one proceeding, Hoerter "produced a daycare employee as a surprise witness" against Fajjaji without prior disclosure and without evidence of any valid subpoena. [*Id.* at 5]. Through this witness, Hoerter then introduced incriminating evidence consisting of photographs "displayed solely from [Hoerter's] personal laptop" without establishing chain of custody or confirming that the photographs depicted Fajjaji's children. [*Id.*]. Meanwhile, Hoerter "suppressed or ignored exculpatory evidence offered by [Fajjaji], including videos displaying Fajjaji's positive parenting and no-contact order violations by the mother's boyfriends. [*Id.* at 12].

In a 2025 hearing, Hoerter "openly mocked and ridiculed [Fajjaji's] mother in front of [Fajjaji's] minor children." [*Id.* at 6]. Throughout other proceedings in 2025, Hoerter dominated hearings by "interjecting, objecting to [Fajjaji's] testimony, and obstructing [Fajjaji's] ability to fully present his case." [*Id.*]. Hoerter also influenced the testimony of Fajjaji's children by "repeatedly tim[ing] requests for the children's in-court appearances immediately after weekends with their mother, ensuring ample opportunity for coaching and alienation." [*Id.* at 12].

Fajjaji maintains that Hoerter acted outside of his scope as GAL to retaliate against Fajjaji for exercising his parental and free speech rights. [*Id.* at 9, 22]. He contends that Hoerter amplified evidence favorable to the mother while ignoring or objecting to evidence favorable to Fajjaji,

thereby engaging in a campaign to deprive Fajjaji of his parental rights. [*Id.* at 15, 18, 21]. He also speculates that Hoerter's actions were driven not by legitimate child welfare concerns, but by Fajjaji's race. [*Id.* at 16].

Fajjaji asserts the following claims against Hoerter: deprivation of Fajjaji's right to procedural due process and his fundamental liberty interest in the care, custody, and control of his children, in violation of 42 U.S.C. § 1983 (Count I) [*Id.* at 8]; violation of Fajjaji's Fourteenth Amendment right to equal protection under § 1983 (Count II) [*Id.* at 14–17]; violation of Fajjaji's First Amendment right to free speech and petition under § 1983 (Count III) [*Id.* at 20]; state-law claims for abuse of process, negligence *per se*, and intentional infliction of emotional distress ("IIED") (Count IV) [*Id.* at 23–27]. Fajjaji seeks compensatory and punitive damages, "[d]eclaratory relief recognizing that [Hoerter's] actions violated [Fajjaji's] constitutional and statutory rights, and "[n]arrow injunctive relief to prevent future ultra vires conduct" by Hoerter. [*Id.* at 27]. Hoerter moves to dismiss all claims pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6).

## II.    STANDARD

### A.  12(b)(1) – Subject Matter Jurisdiction

Federal Rule of Civil Procedure 12(b)(1) allows dismissal for "lack of jurisdiction over the subject matter" of claims asserted in the complaint. "[F]ederal courts have a duty to consider their subject matter jurisdiction in regard to every case." *Answers in Genesis of Ky., Inc. v. Creation Ministries Int'l*, 556 F.3d 459, 465 (6th Cir. 2009). Without subject matter jurisdiction, a federal court lacks authority to hear the case. *Thornton v. Southwest Detroit Hosp.*, 895 F.2d 1131, 1133 (6th Cir. 1990). Plaintiff has the burden of proving subject matter jurisdiction to survive a motion to dismiss under Rule 12(b)(1). *Madison-Hughes v. Shalala*, 80 F.3d 1121, 1130 (6th Cir. 1996).

Lack of subject matter jurisdiction is a non-waivable, fatal defect. *Von Dunser v. Aronoff*, 915 F.2d 1071, 1074 (6th Cir. 1990).

Relevant here, under the *Rooker-Feldman* doctrine, "lower federal courts are precluded from exercising appellate jurisdiction over final state-court judgments." *Lance v. Dennis*, 546 U.S. 459, 463 (2006). The *Rooker-Feldman* doctrine originates from two Supreme Court decisions: *Rooker v. Fidelity Tr. Co.*, 263 U.S. 413 (1923) *and District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462 (1983). In both cases, the Supreme Court found that lower federal courts lacked subject matter jurisdiction over challenges to state court decisions because the Supreme Court alone has appellate jurisdiction over final state court judgments. *See Rooker*, 263 U.S. at 414–15; *Feldman*, 460 U.S. at 483–84. In *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, the Supreme Court clarified that the doctrine "is confined to cases . . . brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." 544 U.S. 280, 284 (2005). If, however, a plaintiff "present[s] some independent claim, albeit one that denies a legal conclusion that a state court has reached in a case to which he was a party . . ., then there is jurisdiction[.]" *Id.* at 293. To determine whether the *Rooker-Feldman* doctrine applies, the Sixth Circuit employs the "source of the injury" test. *McCormick v. Braverman*, 451 F.3d 382, 393 (6th Cir. 2006). "If the source of the injury is the state court decision, then the *Rooker–Feldman* doctrine would prevent the district court from asserting jurisdiction. If there is some other source of injury, such as a third party's actions, then the plaintiff asserts an independent claim." *Id.*

B. <u>12(B)(6) – Failure to State a Claim</u>

Federal Rule of Civil Procedure 8(a) requires that a complaint contain a "short and plain statement of the claim showing that the pleader is entitled to relief." A motion to dismiss under

4

Fed. R. Civ. P. 12(b)(6) tests the legal sufficiency of the complaint. *RMI Titanium Co. v. Westinghouse Elec. Corp.*, 78 F.3d 1125, 1134 (6th Cir. 1996). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). This standard does not "impose a probability requirement at the pleading stage; it simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence of illegal [conduct]." *Twombly*, 550 U.S. at 556. Dismissal under Rule 12(b)(6) is warranted "only if it appears beyond doubt that the plaintiff can prove no set of facts in support of the claims that would entitle him or her to relief." *Zaluski v. United Am. Healthcare Corp.*, 527 F.3d 564, 570 (6th Cir. 2008).

Because a motion to dismiss challenges the sufficiency of the pleadings, "[i]t is not the function of the court [in ruling on such a motion] to weigh evidence." *Miller v. Currie*, 50 F.3d 373, 377 (6th Cir. 1995). Rather, to determine whether the plaintiff set forth a "plausible" claim, the Court "must construe the complaint liberally in the plaintiff's favor and accept as true all factual allegations and permissible inferences therein." *Gazette v. City of Pontiac*, 41 F.3d 1061, 1064 (6th Cir. 1994). Yet the Court is "not bound to accept as true a legal conclusion couched as a factual allegation"; "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555). In deciding a motion to dismiss, the Court "may consider the Complaint and any exhibits attached thereto, public records, items appearing in the record of the case and exhibits attached to defendant's motion to dismiss so long as they are referred to in the Complaint and are central to

5

the claims contained therein." *Bassett v. Nat'l Collegiate Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008) (citation omitted). "A complaint will be dismissed . . . if no law supports the claims made, if the facts alleged are insufficient to state a claim, or if the face of the complaint presents an insurmountable bar to relief." *Southfield Educ. Ass'n v. Southfield Bd. of Educ.*, 570 F. App'x 485, 487 (6th Cir. 2014) (citing *Twombly*, 550 U.S. at 561–64).

## III.    DISCUSSION

Because the Court cannot rule on the merits of a claim if it lacks jurisdiction, the Court begins with Hoerter's jurisdictional and abstention challenges. *See Imhoff Inv., L.L.C. v. Alfoccino, Inc.*, 792 F.3d 627, 631 (6th Cir. 2015) (citing *Gross v. Hougland*, 712 F.2d 1034, 1036 (6th Cir. 1983)).

### 1. Rooker-Feldman

Hoerter first argues that the *Rooker-Feldman* doctrine prohibits this Court from considering Fajjaji's claims. [DE 7 at 48]. He contends that the injuries Fajjaji alleges were caused by unfavorable rulings by the family court, even if Hoerter's actions effectuated those rulings. [*Id.*]. For instance, while Fajjaji claims that he was injured as a result of Hoerter's various objections in family court, his injury actually resulted from the family court's decision to sustain those objections. [*Id.*].  Fajjaji responds that he does not seek review of any state court judgment. [DE 10 at 76]. Rather, he seeks damages for Hoerter's own misconduct that occurred during a state court case. [*Id.* at 77].

While the *Rooker-Feldman* doctrine precludes plaintiffs from seeking lower federal court review of state-court decisions, courts have cautioned that the doctrine applies in limited circumstances. *See Exxon Mobil Corp.*, 544 U.S. at 291 ("*Rooker* and *Feldman* exhibit the limited circumstances in which [the Supreme] Court's appellate jurisdiction over state-court judgments

6

precludes a United States district court from exercising subject-matter jurisdiction in an action it would otherwise be empowered to adjudicate[.]" (citation omitted)); *Coles v. Granville*, 448 F.3d 853, 857 (6th Cir.2006) ("*Rooker–Feldman* is a doctrine with only limited application."); *see also Mcilwain v. Jefferson Cnty.*, No. 3:25-CV-40-RGJ, 2026 WL 711552, at *5 (W.D. Ky. Mar. 13, 2026). The doctrine applies only when a plaintiff challenges the validity of a state court ruling itself. *See Rooker*, 263 U.S. at 414–15 (finding district court lacked jurisdiction when plaintiff asked the court to render a state court judgment against him "null and void"); *Feldman*, 460 U.S. at 486 (finding district court lacked jurisdiction to hear plaintiffs' claims that "the District of Columbia Court of Appeals acted arbitrarily and capriciously in denying their petitions for waiver and that the court acted unreasonably and discriminatorily in denying their petitions").

Here, Fajjaji does not claim that a family court judgment in and of itself violated his constitutional rights. Nor does he seek review of any state court judgment or ask this Court to overturn an unfavorable family court ruling. Instead, he claims that Hoerter's independent actions throughout the family court proceedings caused his injuries. Under Count I, Fajjaji asserts that Hoerter, acting under color of state law, engaged in a campaign to alienate Fajjaji from his children—for instance, by exceeding his role as GAL by counseling the mother in the family court action, making baseless objections in court proceedings, denying Fajjaji fair notice of the daycare witness, and mocking Fajjaji's mother in front of the children. [DE 1 at 8–14]. Fajjaji maintains that his relationship with his children was damaged as a result of Hoerter's actions. [*Id.* at 13].

Similarly, under Count II, Fajjaji alleges that throughout family court proceedings, Hoerter gave preferential treatment to the children's mother due to Fajjaji's race or ethnicity. [*Id.* at 14–20]. He points to Hoerter's alleged pattern of "tampering with, suppressing, and fabricating evidence," ignoring evidence favorable to Fajjaji, and presenting unreliable photographs in court.

[*Id.* at 18–19]. He maintains that these actions stigmatized Fajjaji because of his race and further alienated him from his children. [*Id.* at 16–17].

Under Count III, Fajjaji contends that Hoerter retaliated against Fajjaji when he exercised his First Amendment right to "speak on matters involving his family, to petition the courts, and to seek governmental redress." [*Id.* at 20]. He maintains that Hoerter responded to Fajjaji's protected speech by filing opposing motions in court and advocating for restrictions against Fajjaji, which purportedly interfered with Fajjaji's speech and further alienated him from his children. [*Id.* at 21–23].

Finally, Count IV again alleges that Hoerter filed retaliatory motions against Fajjaji and ignored findings favorable to Fajjaji, tampered with witnesses and physical evidence, and advocated for unreasonable restrictions on Fajjaji. [*Id.* at 23–26].

Under each of these Counts, the source of the injuries alleged by Fajjaji is not a state court decision, but Hoerter's actions. *See McCormick*, 451 F.3d at 393. Fajjaji's allegations resemble those of the plaintiff in *McCormick*, where the Sixth Circuit rejected application of the *Rooker-Feldman* doctrine. *Id.* There, the state court issued judgments in divorce proceedings regarding the appropriate owner of a piece of disputed marital property. *Id.* at 385–87. The plaintiff then filed a complaint in federal district court alleging that defendants committed fraud and misrepresentation in the divorce proceedings and intentionally failed to make plaintiff a party to the litigation, preventing her from asserting her property rights. *Id.* at 392. In reversing the district court's application of *Rooker-Feldman*, the Sixth Circuit explained:

> None of these claims assert an injury caused by the state court judgments; Plaintiff does not claim that the state court judgments themselves are unconstitutional or in violation of federal law. Instead, Plaintiff asserts independent claims that those state court judgments were procured by certain Defendants through fraud, misrepresentation, or other improper means[.]

8

*Id.* Similarly, in *Pittman v. Cuyahoga County Dept. of Children and Fam. Servs.*, the plaintiff-father filed suit in federal district court after losing custody of his child pursuant to a juvenile court order granting custody to the child's great aunt and uncle. 241 F. App'x. 285, 286 (6th Cir. 2007). The plaintiff alleged that defendant Cuyahoga County Department of Children and Family Services ("CCDCFS") violated his due process rights and liberty interest in family matters by seeking custody of the child. *Id.* at 288. He also maintained that CCDCFS "acted wantonly, recklessly, in bad faith, and with a malicious purpose by falsely representing information to the juvenile court and other county officials in order to 'completely cut him out of the [custody] process.'" *Id.* Again, the Sixth Circuit found that the plaintiff's claims were not barred by *Rooker-Feldman* because his claims focused on the defendant's actions, not the outcome of the state court custody proceedings. *Id.* In concluding that *Rooker-Feldman* did not apply, the court noted that plaintiff did "not seek custody of [the child] or otherwise request a reversal of the juvenile court's decision." *Id.*

Much like the plaintiffs in *McCormick* and *Pittman*, Fajjaji does not ask this Court to reverse a state court decision, nor does he question the outcome of any of the family court proceedings. He exclusively focuses on Hoerter's conduct during those proceedings. In other words, he asserts independent claims that family court decisions were procured by Hoerter through improper means, which is expressly permitted under *McCormick* and *Pittman*.

Hoerter is mistaken that, for purposes of applying *Rooker-Feldman*, it is enough that plaintiff's claims are "inextricably intertwined" with the state court's rulings. [DE 7 at 48; DE 11 at 84]. Courts have emphasized that the phrase "inextricably intertwined," which originated in *Feldman*, has no independent meaning and creates no additional legal test. *See McCormick*, 451

9

F.3d at 394–95; *Davani v. Virginia Dep't of Transp.*, 434 F.3d 712, 719 (4th Cir. 2006); *Hoblock v. Albany Cnty. Bd. of Elections*, 422 F.3d 77, 86 (2d Cir. 2005). As explained by the Sixth Circuit:

> In *Exxon*, the Supreme Court implicitly repudiated the circuits' post-*Feldman* use of the phrase "inextricably intertwined" to extend *Rooker–Feldman* to situations were [sic] the source of the injury was not the state court judgment. In short, the phrase "inextricably intertwined" only describes the conclusion that a claim asserts an injury whose source is the state court judgment, a claim that is thus barred by *Rooker–Feldman*.

*McCormick*, 451 F.3d at 394–95. The phrase "inextricably intertwined" does not describe a legal test for determining whether claims are barred but serves as a descriptive label for those claims that meet the test set forth in *Exxon Mobil*. That is, "if the state-court loser seeks redress in the federal district court for the injury caused by the state-court decision, his federal claim is, by definition, "inextricably intertwined" with the state-court decision." *Davani*, 434 F.3d at 719. Hoerter's attempt to apply *Rooker-Felman* to Fajjaji's claims on the ground that they are "inextricably intertwined" with the state court's rulings therefore fails, and *Rooker-Feldman* does not apply to bar Fajjaji's claims in this Court.

### 2. *Younger Abstention*

The *Younger* doctrine was announced in the context of state criminal proceedings but has been extended to state civil proceedings as well. *See Younger v. Harris*, 401 U.S. 37 (1971); *Pennzoil Co. v. Texaco, Inc.*, 481 U.S. 1, 17 (1987); *Moore v. Sims*, 442 U.S. 415, 423 (1979) (explaining that *Younger* applies to "civil proceedings in which important state interests are involved"). The doctrine "requires a federal court to abstain from granting injunctive or declaratory relief that would interfere with pending state judicial proceedings." *O'Neill v. Coughlan*, 511 F.3d 638, 643 (6th Cir. 2008). The Sixth Circuit has stated three factors to determine whether a court must abstain from hearing a case under *Younger*: "(1) state proceedings are pending; (2) the state proceedings involve an important state interest; and (3) the state proceedings will afford the

10

plaintiff an adequate opportunity to raise his constitutional claims." *Parker v. Commonwealth of Ky., Bd. of Dentistry*, 818 F.2d 504, 508 (6th Cir. 1987); *see also Doe v. Univ. of Kentucky*, 860 F.3d 365, 369 (6th Cir. 2017).

Hoerter argues that this Court must abstain from hearing Fajjaji's claims under the *Younger* abstention doctrine because family court proceedings are ongoing, domestic relations and child welfare are important state interests, and Fajjaji can appeal any adverse family court decision. [DE 7 at 48–49]. Fajjaji responds that *Younger* does not prevent him from seeking damages for constitutional violations and that Hoerter is no longer a party in the underlying state proceeding. [DE 10 at 77–78].

First, Hoerter's complaint plainly seeks injunctive or declaratory relief, in addition to damages. [DE 1 at 1, 23, 27]. Moreover, the first prong of *Younger* is satisfied because at the time Fajjaji filed the federal lawsuit, the underlying family court action was pending.[1] *See Federal Express Corp. v. Tennessee Pub. Serv. Comm'n*, 925 F.2d 962, 969 (6th Cir. 1991) ("[I]f a state proceeding is pending at the time the action is filed in federal court, the first criteria for *Younger* abstention is satisfied."); *Zalman v. Armstrong*, 802 F.2d 199, 203 (6th Cir. 1986) ("[T]he principles underlying *Younger* require that the initial frame of reference for abstention purposes be determined at the time that the federal complaint is filed, or at the very latest, at the time a hearing is held on the merits in federal court."). The second prong is also satisfied because the family court action involves an important state interest—custody of minor children. *See Kelm v. Hyatt*, 44 F.3d 415, 420 (6th Cir. 1995) ("These traditional domestic relations issues qualify as important state issues under the second element of Younger."); *Meyers v. Franklin Cnty. Ct. of*

---

[1] While the Court is unaware whether the state-court action remains pending at this time, that is irrelevant for purposes of *Younger* abstention. The relevant question is whether the action was pending at the time the complaint was filed.

*Common Pleas*, 23 F. App'x 201, 204 (6th Cir. 2001) ("[A]bstention is generally appropriate in matters of family relations such as child custody.").

Under *Younger*'s third prong, "where important state interests are involved, a federal court should abstain unless state law clearly bars the interposition of the constitutional claims." *Sun Ref. & Mktg. Co. v. Brennan*, 921 F.2d 635, 641 (6th Cir. 1990) (citing *Middlesex Cnty. Ethics Comm. v. Garden State Bar Ass'n*, 457 U.S. 423, 431 (1982)). The Sixth Circuit has clarified that the pertinent question is whether "federal constitutional claims can be brought in state-court proceedings underway when the federal complaint is filed." *Bunting ex rel. Gray v. Gray*, 2 F. App'x 443, 447 (6th Cir. 2001). When a plaintiff seeks to avoid application of *Younger* abstention due to a lack of opportunity to raise constitutional claims, he must show that he attempted to raise his constitutional claims in the related state-court proceedings. *Pennzoil*, 481 U.S. at 15. "[W]hen a litigant has not attempted to present his federal claims in related state-court proceedings, a federal court should assume that state procedures will afford an adequate remedy, in the absence of unambiguous authority to the contrary." *Id.*

The claims enumerated in Fajjaji's complaint constitute grievances with Hoerter's conduct in his role as GAL and are therefore directly relevant to the underlying family court action. For instance, he alleges that Hoerter made baseless objections at proceedings, bought a surprise witness without notice to Fajjaji, suppressed evidence, presented unreliable evidence in court, in appropriately counseled the children's mother, and mocked Fajjaji's mother in court. He then alleges that these actions violated his parental rights as well as his right to free speech and equal protection. Fajjaji fails to assert that he tried to raise these claims in the state court proceedings or explain why he could not raise these claims in those proceedings. The Court should therefore assume that state procedures will afford him an adequate remedy. *See Pennzoil*, 481 U.S. at 15;

12

*Furr-Barry v. Underwood*, 59 F. App'x 796, 797 (6th Cir. 2003) (affirming the application of *Younger* when a case was pending in juvenile court, because "there was no evidence that the state court proceedings did not provide an opportunity for [the plaintiff] to raise her constitutional claims."). Fajjaji may raise Hoerter's alleged violations on appeal in the state-court proceedings.

When constitutional challenges impact ongoing state proceedings, as they do here, "proper respect for the ability of state courts to resolve federal questions presented in state-court litigation mandates that the federal court stay its hand." *Pennzoil Co.*, 481 U.S. at 14. Accordingly, federal district courts regularly abstain from exercising jurisdiction over similar claims brought against guardians *ad litem* for alleged constitutional violations arising from pending state-court proceedings. *See, e.g.*, *Hickman v. Kreisher*, No. 1:25-CV-1819, 2025 WL 3187100, at *3 (N.D. Ohio Nov. 14, 2025); *Kolley v. Adult Prot. Servs.*, No. 09-CV-10919, 2009 WL 3388374, at *10 (E.D. Mich. Oct. 16, 2009); *Harmon v. Goodwin*, No. 3:24-CV-00047-GNS, 2025 WL 2265306, at *3 (W.D. Ky. Aug. 7, 2025); *Lyons v. Lyons*, No. 3:25-CV-00975, 2025 WL 2808019, at *8 (M.D. Tenn. Oct. 1, 2025). The same result is appropriate here, where Fajjaji raises constitutional claims related to Hoerter's conduct in a pending state-court action. While Fajjaji also raises state-law claims, the Court will likewise abstain from exercising jurisdiction over those claims at this time pursuant to 28 U.S.C. § 1367(c).

Thus, the Court abstains from exercising jurisdiction over the entire matter to prevent interference with the ongoing state-court action. While Hoerter seeks outright dismissal of the complaint on these grounds, "[w]hether the plaintiff[] seek[s] a legal versus an equitable remedy controls how the district court disposes of the case after holding that the *Younger* doctrine applies to it." *Nimer v. Litchfield Twp. Bd. of Trustees*, 707 F.3d 699, 702 (6th Cir. 2013). "If the plaintiff[] seek[s] equitable relief, such as an injunction, then the district court may exercise its discretion

and decide whether to dismiss the case" or stay it, pending the conclusion of the ongoing state court proceedings. *Id.* If the plaintiff seeks "purely legal relief," such as damages, the district court has no discretion to dismiss and must instead stay the case. *Id.* (citing *Quackenbush v. Allstate Ins. Co.*, 517 U.S. 706, 731 (1996)). "When the plaintiff seeks *both* equitable and legal relief, the district court should stay, rather than dismiss, to 'protect against the possibility that the [plaintiff] could be deprived the opportunity to present the merits of [their] claims' and to avoid future statute of limitations issues." *Satkowiak v. McClain*, 762 F. Supp. 3d 629, 642 (E.D. Mich. 2024), *aff'd*, No. 24-1600, 2024 WL 5088685 (6th Cir. Dec. 12, 2024) (quoting *Carroll v. City of Mount Clemens*, 139 F.3d 1072, 1076 (6th Cir. 1998)); *Cummings v. Husted*, 795 F. Supp. 2d 677, 694 (S.D. Ohio 2011) ("[W]hen application of *Younger* abstention is proper and the plaintiff is seeking money damages and equitable relief the appropriate procedure is to stay the proceedings rather than dismiss the case without prejudice." (citing *Brindley v. McCullen*, 61 F.3d 507, 509 (6th Cir. 1995))).

Here, Fajjaji seeks both equitable relief and monetary damages. Accordingly, having concluded that *Younger* abstention applies, the Court will stay this case pending conclusion of the Jefferson County family court proceedings. The Court therefore does not reach the merits of Hoerter's motion to dismiss to the extent he argues that Fajjaji fails to state a claim under Rule 12(b)(6).

## IV.    CONCLUSION

For the reasons above, the Court **ORDERS** as follows:

(1) Hoerter's motion to dismiss [DE 7] is **GRANTED IN PART**, to the extent it seeks to apply *Younger* abstention, and otherwise **DENIED WITHOUT PREJUDICE** subject to refiling after the resolution of the ongoing state-court proceedings.

(2) It is **ORDERED** that this case is **STAYED** pending resolution of ongoing proceedings in *Fajajji v. Fajjaji*, No. 23-CI-501644.

(3) The parties are **ORDERED** to provide updates to the Court regarding the status of the ongoing state-court proceedings every **SIXTY (60)** days.

(4) The parties are further **ORDERED** to notify this Court that the pending state-court action has concluded within **TWENTY (20)** days of its conclusion.

Rebecca Grady Jennings, District Judge
United States District Court

May 5, 2026

15